```
                   UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Donna L. Hadley, et al.**

    **v.**

**HomeBridge[1] Financial Services, et al.**

Case No. 19-cv-866-PB
Opinion No. 2020 DNH 135

### MEMORANDUM AND ORDER

Pro se plaintiffs Donna and Jamal Hadley brought this action against "Home Bridge Financial Corporate Legal Team," "Home Bridge," and "Corporate Headquarters" (collectively "HomeBridge" or "defendants"). Construing the amended complaint liberally and in the light most favorable to plaintiffs, I understand them to assert one count of fraudulent misrepresentation and one count of forgery arising out of HomeBridge's refinancing of their home mortgage. Defendants moved to dismiss these claims pursuant to Federal Rule of Civil

---

[1] Plaintiffs' amended complaint refers to defendants as "Home Bridge Financial Services" and "Home Bridge." See, e.g., Am. Compl., Doc. No. 27 at 1, 2. Defendants use the spelling "Homebridge" in their briefs. Defs.' Mot. to Dismiss, Doc. No. 29 at 1 n.1. Official loan documents referenced by — and, therefore, fairly incorporated into — the amended complaint, see Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004), use a third spelling: "HomeBridge," e.g., Closing Disclosure, Ex. 3 to Defs.' Mot. to Dismiss, Doc. No. 29-3 at 1. I adopt, "HomeBridge," the spelling used in the official loan documents.

Procedure 12(b)(6), arguing (1) that plaintiffs failed to allege sufficient facts in support of their fraudulent misrepresentation claim, and (2) that the loan documents foreclose plaintiffs' forgery claim. For the following reasons, I deny the motion to dismiss with respect to plaintiffs' first claim and grant the motion with respect to plaintiffs' second claim.

## I.   STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must include factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Under this standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility demands "more than a sheer possibility that [the] defendant has acted unlawfully," or "facts that are 'merely consistent with' [the] defendant's liability . . . ." Id. Although the complaint need not set forth detailed factual allegations, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

In evaluating the pleadings, I excise any conclusory statements from the complaint and credit as true all "[n]on-conclusory factual allegations" and reasonable inferences drawn from those allegations. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). I "may also consider 'facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss.'" Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019) (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)). I must, additionally, construe a pro se party's pleadings liberally. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75–76 (1st Cir. 2014) (citing Erikson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam)).

"In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Specifically, "the circumstances to be stated with particularity under [Federal Rule of Civil Procedure] 9(b) generally consist of the 'who, what, where, and when of the allegedly misleading representation.'" Dumont v. Reily Foods Co., 934 F.3d 35, 38 (1st Cir. 2019) (brackets omitted) (internal quotation marks

3

omitted) (quoting Kaufman v. CVS Caremark Corp., 836 F.3d 88, 91 (1st Cir. 2016)). This is consistent with the New Hampshire state law requirement that a "plaintiff cannot allege fraud in general terms, but must specifically allege the essential details of the fraud and the facts of [the defendant's] fraudulent conduct." Petrin v. Liberatore, No. 2017-0675, 2018 WL 4940753, at *3 (N.H. Sept. 17, 2018) (per curiam) (internal quotation marks omitted) (quoting Snierson v. Scruton, 145 N.H. 73, 77 (2000)).

## II.  BACKGROUND

### A.  Original Complaint

Plaintiffs originally filed this action in New Hampshire state court. Compl., Ex. A to Notice of Removal, Doc. No. 1-1 at 2. The original complaint did not state a cause of action, but generally alleged the following conduct by HomeBridge in conjunction with the origination and servicing of a loan:

(1) that HomeBridge did not have a representative present at the closing of the loan;
(2) that the notary who conducted the closing was misleading, unprofessional, unable to interpret the loan documents, and forced compliance with the documents without proper counsel;
(3) that some parts of the documents were in Latin;
(4) that there were closing discrepancies that were not corrected in plaintiffs' presence at the closing;
(5) that there was non-disclosure of a higher interest rate;
(6) that HomeBridge used plaintiffs' veteran eligibility to qualify them for a loan insured by

    the Department of Veterans Affairs ("VA") without plaintiffs' prior knowledge;
(7) that HomeBridge loan processor Rick Yankelov misled plaintiffs into securing a loan that was non-existent;
(8) that HomeBridge has an unusual reconciliation practice that caused an escrow analysis resulting in a $200-per-month increase to their monthly payments;
(9) that Plaintiffs were unable to contact HomeBridge personnel;
(10) that HomeBridge continued efforts to collect the loan after Plaintiffs provided written notice of intent to arbitrate or litigate;
(11) that HomeBridge did not comply with Plaintiffs' request to return all money paid on the loan; and
(12) that Plaintiffs were never in default.

Doc. No. 1-1 at 2-3, 5-6.

Defendants removed to this court, Notice of Removal, Doc. No. 1 at 1, and then moved to dismiss, Mot. to Dismiss, Doc. No. 5 at 1. When plaintiffs failed to object, I dismissed with prejudice plaintiffs' claims to the extent that those claims were based on nine of the twelve allegations listed above. Order, Doc. No. 13 at 1-2. The only remaining allegations were:

(1) that there were closing discrepancies that were not corrected in plaintiffs' presence at the closing;
(2) that there was non-disclosure of a higher interest rate;
(3) that HomeBridge loan processor Rick Yankelov misled plaintiffs into securing a loan that was non-existent.

These conclusory statements, however, were unsupported by specific factual allegations. I, therefore, dismissed these remaining allegations without prejudice and allowed plaintiffs thirty days to amend their complaint. Doc. No. 13 at 2.

5

**B.     Plaintiffs' Amended Complaint**

Plaintiffs filed an amended complaint on February 10, 2020, which provides a somewhat clearer narrative of the events underlying their suit.² Am. Compl., Doc. No. 27 at 2-4. According to the amended complaint, Rick Yankelov, a loan broker for HomeBridge, called plaintiffs repeatedly in early 2018. Doc. No. 27 at 2. Although plaintiffs initially told Yankelov that they "weren't interested in anything he ha[d] to offer[,]" Donna Hadley eventually relented and listened "to what he had to say." Doc. No. 27 at 2. Yankelov offered to arrange a home equity loan for plaintiffs in the amount of $21,400. Doc. No. 27 at 2. Donna believed that Yankelov was, in fact, arranging for a $21,400 home equity loan. Doc. No. 27 at 2. In preparation for this loan, Yankelov had Donna pay for an appraisal, several water tests, and a termite inspection. Doc. No. 27 at 2. In Yankelov's letters to the underwriter, he "enhance[d] [plaintiffs'] ability to pay for [the] loan." Doc. No. 27 at 2. Donna has post-traumatic stress disorder ("PTSD") and "several situational behavioral disorders" because of her "[four-]year tour in the [A]rmy during the Gulf War." Doc. No. 27 at 3. She states that

---

² Although the amended complaint adds context to plaintiffs' allegations about closing discrepancies and Yankelov's misleading behavior, it adds no factual support to plaintiffs' allegation of a non-disclosure of a higher interest rate.

Yankelov "preyed upon [her] disability" and "got the loan approved so [her] house would be foreclosed on and then the bank would get their money." Doc. No. 27 at 2. Yankelov "received a large amount for the broker fee, as well." Doc. No. 27 at 2.

A notary came to plaintiffs' house to close on the loan. Doc. No. 27 at 2. When the notary told Donna that neither Yankelov nor any loan officer from HomeBridge would be at the closing, Doc. No. 27 at 2, Donna attempted to call her husband Jamal, Yankelov, and the loan officers, but received no answer, Doc. No. 27 at 3. Donna became "very nervous and anxious" due to her PTSD. Doc. No. 27 at 3. She was unable to read all of the loan documents but noticed that "the figures were way off and wrong." Doc. No. 27 at 3. She asked the notary about the incorrect figures, and the notary told her to sign a limited power of attorney to allow an attorney to "fix all of the discrepancies." Doc. No. 27 at 3. Donna was "overwhelmed" and crying when she eventually signed the loan documents. Doc. No. 27 at 3. Despite Donna's many attempts to reach Yankelov, the HomeBridge loan officers, and the attorney who was supposed to correct the errors, none of them ever returned Donna's calls. Doc. No. 27 at 3.

Later, rather than receiving a loan statement for what Donna believed would be a home equity loan, plaintiffs received a mortgage statement. Doc. No. 27 at 3. Instead of issuing the

7

$21,400 home equity loan that plaintiffs expected, HomeBridge had refinanced their existing home loan with a $214,000 mortgage. Doc. No. 27 at 4. Plaintiffs claim that HomeBridge "add[ed] zeroes to the documents [to make] a $21,400 loan into a $214,000 mortgage." Doc. No. 27 at 4.

Beyond using the words "fraud" and "misrepresentation," the amended complaint does not specifically name plaintiffs' cause of action. Construed liberally and in the light most favorable to plaintiffs, however, I read their amended complaint to assert one count of fraudulent misrepresentation and one count of forgery:

(1) **Count I (Fraudulent Misrepresentation)**
Yankelov, a loan broker for HomeBridge, represented to plaintiffs that he was preparing a $21,400 home equity loan for them when he was, in fact, preparing a $214,000 refinance of their home mortgage. Donna justifiably relied upon Yankelov's representations and, as a result of that reliance, plaintiffs are now committed to a $214,000 mortgage.

(2) **Count II (Forgery)**
Donna signed documents for a $21,400 home equity loan, but HomeBridge later added zeroes to the loan documents, converting a $21,400 home equity loan into a $214,000 mortgage.

C.  **The Motion to Dismiss**

Defendants have moved to dismiss plaintiffs' complaint on two grounds: first, that Count I is not supported by factual allegations sufficient to meet the heightened pleading requirements articulated in Rule 9(b); and second, that the loan

8

documents foreclose the claim of forgery alleged in Count II.[3] They attach four loan documents to their motion to dismiss. Defs.' Mot. to Dismiss Pls.' Am. Compl. ("Defs.' Mot."), Doc. No. 29. The four documents are: (1) the note, Ex. 1 to Defs.' Mot., Doc. No. 29-1; (2) the mortgage, Ex. 2 to Defs.' Mot., Doc. No. 29-2; (3) the closing disclosure, Ex. 3 to Defs.' Mot, Doc. No. 29-3; and (4) the first payment letter, Ex. 4 to Defs.' Mot., Doc. No. 29-4.[4] All four documents are signed "Donna L. Hadley." Doc. No. 29-1 at 4; Doc. No. 29-2 at 15, 19; Doc. No. 29-3 at 5; Doc. No. 29-4 at 1. Although defendants have redacted portions of the loan number and mortgage identification number ("MIN"), the documents show no other signs of alteration by defendants.

---

[3] In an undeveloped argument, defendants also assert that plaintiffs have failed to meet the "short and plain statement of the claim" requirement found in Federal Rule of Civil Procedure 8(a)(2). Doc. No. 29 at 9. Defendants do not, however, specify in any way how plaintiffs' complaint falls short. I decline to make their argument for them.

[4] Plaintiffs refer to these loan documents in their amended complaint, see Doc. No. 27 at 3–4, and the documents' content is central to their claims. The documents are, therefore, fairly incorporated into the amended complaint and appropriately considered for purposes of this motion to dismiss. See Rodi, 389 F.3d at 12 (stating that, on a motion to dismiss, the court must consider "materials fairly incorporated within" the complaint which "sometimes include[] documents referred to in the complaint but not annexed to it."); see also Breiding, 939 F.3d at 49.

The mortgage shows that Donna Hadley executed a mortgage with HomeBridge, the lender,[5] on April 20, 2018. Doc. No. 29-2 at 2-3. The amount of the loan is listed as "Two Hundred Fourteen Thousand And 00/100 Dollars (U.S. $214,000.00) plus interest." Doc. No. 29-2 at 3.

The closing disclosure identifies the purpose of the loan as "Refinance" and also lists "Donna L. Hadley" as the borrower, "HomeBridge Financial Services, Inc." as the lender, and "$214,000" as the loan amount. Doc. No. 29-3 at 1. The closing disclosure also shows that the loan was used to pay off the $183,140.22 balance on plaintiffs' existing mortgage, as well as approximately $21,000 total paid to seven banks and other lenders. Doc. No. 29-3 at 3. Donna Hadley, as the borrower, received $3,690.95 at closing. Doc. No. 29-3 at 3. The "Contact Information" section of the closing disclosure identifies "Peoples Bank & Trust Company" as the mortgage broker with "Richard Lee Yankelov" as its contact. Doc. No. 29-3 at 5.

---

[5] Although the mortgage lists, in one instance, "Richard Lee Yankelov" as the "Individual Loan Originator" and "People's Bank & Trust Company" as the "Loan Originator Organization," Doc. No. 29-2 at 15, the loan documents in all other respects identify HomeBridge as the lender, e.g., Doc. No. 29-2 at 3.

### III. Discussion

**A.    Count I and the Pleading Requirements for Fraud**

Under New Hampshire law, "[t]o sufficiently allege a claim of fraud, the plaintiff[s] must allege that [defendants] 'made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause [the plaintiffs] to rely upon it.'" Petrin, 2018 WL 4940753, at *3 (quoting Snierson, 145 N.H. at 77). In addition, plaintiffs "must also allege that [they] justifiably relied upon [defendants'] representation." Id. "While a promise is not a statement of fact and hence cannot, as such, give rise to an action for misrepresentation, a promise can imply a statement of material fact about the promisor's intention and capacity to honor the promise." Thompson v. H.W.G. Grp., Inc., 139 N.H. 698, 700-01 (1995) (internal quotation marks omitted) (quoting Hydraform Prods. Corp. v. Am. Steel & Aluminum Corp., 127 N.H. 187, 200 (1985)).

Plaintiffs have adequately alleged the elements of their fraudulent misrepresentation claim as I have construed it above. Specifically, according to plaintiffs' allegations, Yankelov told plaintiffs that he was arranging a $21,400 home equity loan for them, while he was, in fact, arranging a $214,000 mortgage.[6]

---

[6] Apart from stating in a footnote that "Yankelov is not employed by Home[B]ridge," Doc. No. 29 at 6 n.3, defendants advance no

11

Plaintiffs also allege that Donna "believed what [Yankelov] said to be true."[7] Doc. No. 27 at 2. Plaintiffs' complaint is, further, replete with allegations that Yankelov was aware of the falsity of the alleged misrepresentations and intended to cause plaintiffs to rely on them. Doc. No. 27 at 2, 4.

Although defendants identify numerous statements in plaintiffs' pleadings insufficient to support a fraud claim,[8] this does nothing to disturb my conclusion that plaintiffs have alleged the "who, what, where, and when" of the fraudulent inducement claim as I have construed it. See Dumont, 934 F.3d at

---

argument that HomeBridge cannot be held responsible for allegedly fraudulent statements made by Yankelov. In any event, the factual record at this stage in the proceedings is not sufficiently developed to determine whether Yankelov acted as an agent of HomeBridge. See Fernandes v. Havkin, 731 F. Supp. 2d 103, 111 (D. Mass. 2010) (acknowledging that, under some circumstances, a mortgage broker may be considered an agent of the lender); Patterson v. Tirollo, 133 N.H. 623, 627–28 (1990) (noting that the question of whether an agency relationship exists "is a question of fact" under New Hampshire state law).

[7] I note that plaintiffs may ultimately struggle to prove that Donna justifiably relied on Yankelov's alleged misrepresentations because those statements are directly contradicted by the loan documents she signed. Defendants have not moved to dismiss on this ground, so I need not analyze it at this stage.

[8] For instance, Yankelov's vague promises that "he could lower [plaintiffs'] interest rate and [their] monthly payments," Doc. No. 27 at 2, are not statements of fact and are, therefore, the types of promises insufficient to state a claim for fraud and misrepresentation. See Thompson, 139 N.H. at 700–01.

12

38. Defendants' motion to dismiss plaintiffs' claim of fraudulent misrepresentation is, therefore, denied.

**B.     Count II and the Loan Documents**

"It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Yacubian v. United States, 750 F.3d 100, 108 (1st Cir. 2014) (alteration omitted) (quoting Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 229 n.1 (1st Cir. 2013)). Thus, to the extent plaintiffs' account differs from what is reflected in the loan documents, the loan documents control my analysis.

Plaintiffs argue only in a vague and conclusory way[9] that the loan documents were altered by "the numbers game of adding zeroes to the documents[,]" turning "a $21,400 loan into a $214,000 mortgage." Doc. No. 27 at 4. Apart from defendants' redaction of some of plaintiffs' identifying information, the loan documents show no signs of forgery whatsoever. The note,

---

[9] The only alteration specifically identified by plaintiffs is the "line through the date [with] initials and [a] new date . . . added" on the closing disclosure. Pls.' Obj. to Defs.' Mot. to Dismiss, Doc. No. 30 at 2. This refers to the bottom of page five of the closing disclosure, where the date "4-20-18" has been crossed out, replaced with the date "4-24-18," and is accompanied by Donna Hadley's initials, "DLH." Doc. No. 29-3 at 5. Although Plaintiffs state that this change is "just one of many troubling elements," Doc. No. 30 at 2, they have neither alleged that HomeBridge changed this date, nor that plaintiffs suffered any injury as a result of the change.

mortgage, and closing disclosure all list the loan amount as $214,000.00. Doc. No. 29-1 at 1; Doc. No. 29-2 at 3; Doc. No. 29-3 at 1. The mortgage further spells out the loan amount as "Two Hundred Fourteen Thousand and 00/100 Dollars." Doc. No. 29-2 at 3. These documents directly contradict plaintiffs' allegation that defendants "add[ed] zeroes to the documents making a $21,400 loan into a $214,000 mortgage." Doc. No. 27 at 4. Plaintiffs' claim of forgery is, therefore, dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Doc. No. 29) is denied with respect to plaintiffs' claim of fraudulent misrepresentation (Count I) and granted with respect to plaintiffs' claim of forgery (Count II).

SO ORDERED.

/s/ Paul Barbadoro
Paul J. Barbadoro
United States District Judge

July 30, 2020

cc:  Donna L. Hadley, pro se
     Jamal Hadley, pro se
     Grant Richard Gendron, Esq.
     Aaron Wagner, Esq.